CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 2 6 2006

JOHN F. CORCORAN, CLERK
BY: _Linda Bright_
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

KIMBERLY DAWN RATLIFFE,       )
    Petitioner,             )    **Civil Action No. 7:05-cv-00668**
                    )
v.                            )    **MEMORANDUM OPINION**
                    )
WARDEN, POCAHONTAS            )
CORRECTIONAL UNIT,            )    **By: Hon. James C. Turk**
    Respondent.             )    **Senior United States District Judge**

Petitioner Kimberly Dawn Ratliffe ("Ratliffe"), proceeding pro se, brings this action as a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Ratliffe challenges the judgment of the Circuit Court of Franklin County dated March 5, 2002, convicting her of felony child neglect, in violation of Virginia Code Ann. § 18.2-371.1, for allowing her baby daughter to drown in a hot tub. The respondent filed a motion to dismiss, and petitioner responded, making the matter ripe for the court's consideration. Upon review of the record, the court concludes that the motion to dismiss must be granted.

## I. Background

In dismissing Ratliffe's appeal, the Court of Appeals of Virginia stated:

> [Ratliffe], her nine-month-old daughter, and the child's father went to visit a friend [Bill Riddick] in Franklin County. After arriving, [Ratliffe] made a bed for the child in the bedroom's hot tub rather than in her portable crib because the room was small. The child could pull herself up but could not walk and could not climb out of the tub. The drain was inoperative.
> After putting the child to bed in the tub about 10:30 p.m., [Ratliffe] heard her cry. She went into the bedroom and found that the child had turned on the water and was wet. [Ratliffe] turned off the water and put the child back in the tub without changing her. Around 11:00 p.m., the child cried again, and [Ratliffe] returned to the bedroom. She gave the child a bottle, and the child quieted down. [Ratliffe] remained in the bedroom and fell asleep on the bed. [Ratliffe] never heard the child cry again although the hot tub was only forty inches from her bed. A neighbor heard the child crying loudly at 11:30 p.m. while walking past in the hallway of the building. She still heard the crying ten or fifteen minutes later when she returned past the door. At approximately 1:00 a.m., [Ratliffe] awoke, found the tub overflowing, and the child drowned. The water had run for a long time and had overflowed into the apartment two levels below.
> At the emergency room, attempts were made to revive the child, but her body temperature and oxygen levels indicated that she had been in the water for "a fair

1

amount of time" and without oxygen for "a long period of time." [Ratliffe] told the emergency room nurse that she should have known better. She told the nurse, "she had put the child in the tub before and the child had messed with the water."

The trial judge specifically found the child had been crying for a lengthy period of time but [Ratliffe] did not hear her cries. When the child had gotten wet, [Ratliffe] did nothing to take care of the child. She placed the child in the hot tub knowing that the water was dripping and that the child could turn on the water. [Ratliffe] placed the child in a position of extreme peril and left her there. As a result, the child died by drowning. The trial court concluded, by finding beyond a reasonable doubt, that [Ratliffe] wilfully acted and omitted to act in a way that showed a gross, wanton, and culpable disregard for the life of [her] child.

Ratliffe v. Commonwealth, Record No. 0532-02-3, Order dated September 23, 2002.

The child's death occurred on December 8 or 9, 2000. A Franklin County grand jury issued indictments charging Ratliffe with committing "a willful act or omission . . . as was so gross, wanton and culpable as to show a reckless disregard for the life of a child under the age of eighteen," in violation of Virginia Code Ann. § 18.2-371-1, and with felony murder of her child while engaged in the felony offense of child abuse and neglect as just described. Ratliffe pled not guilty to the charges, waived her right to a jury trial, and proceeded to a bench trial.

Ratliffe offered the following testimony about the night of her baby's death. (Trial Transcript ("T. Tr.") 156-96, Jan. 16, 2002). The child was awake around 10:00 p.m. when Ratliffe and the baby's father ("Andy")[1] arrived at Bill Riddick's condo to spend the night. The adults played with the child for a few minutes. Then, around 10:30 p.m., Ratliffe asked Andy to bring the baby's things from the car. She did not put the baby to sleep on the bed, because in the past, the baby had awakened, crawled off the high bed, and hurt herself. Ratliffe was afraid the baby might also wake up, crawl off, and hurt herself if she slept on the floor. On a previous visit a month earlier, Ratliffe had made a bed for the child in Riddick's bedroom hot tub. She gave the baby a bottle and placed her, fully clothed, on a blanket bed she had made in the tub. She left the baby's soft leather shoes on, because the baby's feet tended to get cold. Ratliffe then returned to the livingroom, leaving the bedroom door ajar.

About ten or fifteen minutes later, she heard the baby crying and went to check on her. She

---

[1]Andy Ratliffe and the defendant are now married.

2

found the child had thrown down her bottle and was sitting up. Ratliffe then thought she saw a drop of water fall from the faucet. She felt the faucet handle and believed it to be tight. She felt the blankets and the bottom of the tub itself; they were all dry. Since the baby was OK, Ratliffe took a small rug from the floor and folded it to prop up the bottle so the child could drink while lying down. The baby smiled and began sucking her bottle again. Ratliffe returned to the livingroom and told Andy, "She turned the water on."[2] She smiled at him and said, "Maybe you ought to get the playpen." When he looked surprised, she told him she was only "picking on" him and that everything was really fine.[3] A few minutes later the baby cried the second time. She stopped crying immediately when she saw Ratliffe come into her room. Ratliffe then got ready for bed herself, put the baby back onto the bedding in the tub, shut the door, and stretched herself across the end of the waterbed, forty inches from the edge of the tub. She heard the baby's suckling noises stop and knew the child was asleep. Then, she fell asleep herself. She did not hear the baby cry again.[4]

The judge found Ratliffe guilty of felony child abuse, but not guilty of felony murder, and sentenced her to sixty months of imprisonment with thirty months suspended, to be followed by three years probation and five years good behavior.[5] Ratliffe appealed. The Court of Appeals of Virginia affirmed her conviction and denied her petition for rehearing en banc. (Record No. 0532-02-3). The

---

[2]Riddick testified at trial that after she returned from checking on the baby the first time, Ratliffe told him and the baby's father that "the baby had turned the water on and that the baby was wet and the baby wasn't happy." (Trial Tr. 61). Ratliffe testified that the baby had never turned on the water in the hot tub (T. Tr. 166) and that she had never told Andy or Riddick that the baby was wet after she cried the first time (T. Tr. 186).

[3]On cross examination, Ratliffe also testified that she explained to Andy how she had only thought she saw a drop of water and told him that nothing was wet and everything was fine. (T. Tr. 187)

[4]Ratliffe testified, "If [the baby] would have cried while I was laying there I would have woke up. She did not cry while I was laying there." (T. Tr. 192).

[5]Although Ratliffe has been released from her sentence of incarceration since she filed this habeas petition, she remains "in custody" pursuant to the challenged state court judgment because she is serving a term of probation. See , e.g., Jones v. Cunningham, 371 U.S. 236, 238 (1963). Likewise, because of her probation status, her habeas action is not mooted by her release from incarceration. See Spencer v. Kemna, 523 U.S. 1, 7 (1998).

3

Supreme Court of Virginia refused Ratliffe's subsequent appeal on April 6, 2004. (Record No. 032569). In January 2005, Ratliffe filed a petition for a writ of habeas corpus in the Supreme Court of Virginia, alleging numerous claims of prosecutorial misconduct, trial error, and ineffective assistance. (Record No. 050208). Respondent moved to dismiss and submitted trial counsel's affidavit concerning his trial strategy and his responses to Ratliffe's ineffective assistance claims. The Supreme Court of Virginia granted the motion to dismiss and denied Ratliffe's subsequent motion for rehearing.

In her § 2254 petition, Ratliffe alleges that she was denied the effective assistance of counsel in that:

1. counsel failed to protect her from a malicious prosecution;

2. counsel:
   a. did not put forth his best efforts because he was underpaid as court-appointed counsel;
   b. failed to investigate, research, and argue that a nine-month old child does not possess the dexterity to turn on a water faucet;
   c. did not argue that infants drown quickly and silently;
   d. failed to interview the prosecution's witnesses;
   e. did not obtain an expert to establish that a nine-month-old baby does not possess the dexterity to turn on a water faucet;

3. counsel failed to sufficiently consult with her regarding her available defenses and abandoned their agreed upon defense strategy without consulting her;

4. counsel failed to argue that she was only joking when she told the baby's father that the victim had turned on the water;

5. counsel:
   a. failed to argue that her baby had never turned on the water before by questioning two witnesses she told this to on the night the victim drowned;
   b. failed to object to improper arguments by the prosecution;
   c. failed to consult with her regarding a facsimile he received two days before trial;

6. counsel failed to argue that there was no proof the victim turned on the water;

7. counsel failed to prove the victim had not gotten wet by effectively cross-examining Mr. Riddick;

8. counsel failed to argue that Mr. Riddick did not know that there was a problem with the drain before the drowning;

9. counsel failed to:
   a. introduce affidavits and statements to prove her character;

4

b.      present evidence of her character and habits;

10.     counsel failed to argue that her act of putting the victim to sleep in a tub was not an unreasonable act; and

11.     counsel failed to question witnesses effectively or in other instances question them at all.[6]

## II.  Opinion of the Court

Respondent concedes that Ratliffe has exhausted state court remedies as to all of her current habeas claims, either by presenting them to the Supreme Court of Virginia in state habeas proceedings, see Sullivan v. Boerckel, 526 U.S. 838, 846 (1999), or because they would now be procedurally defaulted under Virginia's successive petition rule, Virginia Code Ann. § 8.01-654(B)(2). Teague v. Lane, 489 U.S. 288, 298 (1989); Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000).  To the extent that the Virginia courts have adjudicated Ratliffe's habeas claims, this court may grant habeas relief only under the standard set forth in 28 U.S.C. § 2254(d)(1):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[6]In Claim 11, Ratliffe lists the following witnesses and the issues on which counsel allegedly should have questioned them:

11a.    Dr. Galvin:  the dexterity of a 10-month-old to turn bathtub knobs;

11b.    Dr. Venuti (medical examiner):  baby's health and normal development and his co-worker's comment that "some main event" had "participated [sic]";

11c.    William (Bill) Riddick (hot tub owner):  Ratliffe's "joking" comment about the baby turning on the water, Riddick's change in testimony after the preliminary hearing, and his being unaware before the drowning that the drain did not work;

11d.    Ms. Wood (nurse):  the meaning of "messed with" and Ratliffe's statement that the baby had never turned on the water;

11e.    Ms. Cundiff (investigating officer):  Ratliffe's statement that her baby had never turned on water before;

11f.    Marcia Simmons (social worker):  the fact that Ratliffe's putting a baby to bed in a bathtub did not meet criteria for Social Services to have investigated a parent's fitness;

11g.    Robert Ellison:  Ratliffe's character; and

11h.    Cynthia Garrett:  Ratliffe's character.

5

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"Under §2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000). In addition, §2254(e)(1) requires a federal reviewing court to presume that the state court's determination of a factual issue is correct unless the petitioner offers "clear and convincing evidence" rebutting that determination.

To prove that her counsel's assistance at trial or sentencing or on appeal was so defective as to require reversal of her conviction or sentence, a convicted defendant must meet a two prong standard, showing both counsel's defective performance and resulting prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, petitioner must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. Id. at 687-88. Petitioner must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. Id. at 689. Even if she shows that counsel performed incompetently, petitioner is not entitled to habeas relief unless she can satisfy the second Strickland prong by showing that counsel's errors "actually had an adverse effect on [petitioner's] defense." Id. at 693. At a minimum, petitioner must demonstrate "a reasonable probability" that but for counsel's errors, the result reached by a reasonable and impartial fact finder would have been different. Id. at 694-95. If it is clear that petitioner has not satisfied one prong of this Strickland test, the court need not inquire whether she has satisfied the other prong. Id. at 697. A habeas petitioner is "entitled to an evidentiary hearing only to resolve disputed issues of material fact," and therefore, will not warrant a hearing unless she first presents "a colorable claim to relief by showing that the alleged additional

6

facts, if true, would at least arguably compel the granting of the writ."[7] Poyner v. Murray, 964 F.2d 1404, 1422 (4th Cir. 1992).

### Claim 1: Failure to protect from malicious prosecution

In support of this claim, Ratliffe alleges that the prosecutor had stated to her and to her attorney his personal belief that the child was murdered and that Ratliffe was not a murder suspect. Thus, Ratliffe argues, the prosecution of the child abuse and felony murder charges against her was malicious and counsel should have protected her accordingly. The Supreme Court of Virginia found that this claim failed under both prongs of Strickland.

This court cannot find that the Virginia courts' disposition of this claim was an unreasonable application of Strickland. In Virginia, a claim of malicious prosecution requires proof that the criminal charge was instituted without probable cause to believe that the defendant committed the crime charged. Bain v. Phillips, 228 S.E.2d 576, 581 (Va. 1976). In state habeas proceedings, trial counsel stated that he did not believe the prosecution against Ratliffe was malicious.[8] Counsel understood that the prosecutor, despite his personal beliefs, decided to pursue charges of child neglect and felony murder against Ratliffe and the baby's father because he thought a reasonable fact finder could conclude from the available evidence that they were guilty of the charges.[9] Ratliffe fails to demonstrate any viable objection of malicious prosecution that counsel could have made, as she

---

[7]Once she has alleged facts demonstrating a ground for habeas relief, a petitioner must also demonstrate that she developed or attempted to develop those facts in state proceedings. See 28 U.S.C. § 2254(e)(2).

[8]The record reflects that during a motions hearing in the circuit court on January 11, 2002, the prosecutor stated the evidentiary basis for the felony murder charge: "We are not saying that [the victim] was intentionally killed, but a reasonable fact finder could believe, based on what I believe the evidence is, that someone intentionally killed this child." (Hr'g Tr. 25, Jan. 11, 2002). This statement, offered by petitioner as evidence that the prosecutor did not personally believe the baby's death was accidental, is, in fact, part of the prosecutor's argument that the evidence supported a child neglect charge, whether the fact finder believed that someone accidently or intentionally turned on the water. The comment certainly does not reflect that the prosecutor believed Ratliffe to be innocent of all criminal charges.

[9]The existence of probable cause for the charge is borne out by the fact that the trial court and court of appeals found the evidence sufficient to sustain the finding that petitioner was guilty of felony child neglect.

7

fails to show lack of probable cause for the charges against her.[10] Moreover, counsel did move to strike the evidence on other grounds, arguing that the evidence did not prove foreseeability of the danger that the child could turn on the water and drown without Ratliffe's knowledge. This court cannot second guess counsel's reasonable trial strategy to object on this ground rather than arguing malicious prosecution. Strickland, 466 U.S. at 681. The court will grant the motion to dismiss as to Claim 1, pursuant to § 2254(d).

## Claim 2: Inadequate pretrial investigation

Ratliffe alleges that counsel told her and her father that he could do a more exhaustive investigation if he was retained. Ratliffe asserts that counsel should have investigated evidence in the prosecutor's notes that the emergency room doctor and a staff member at the medical examiner's office expressed to investigators his doubts that a child of the victim's age would have had the dexterity to turn on the water. Ratliffe alleges that counsel failed to investigate or develop for trial information that she provided to him on how an infant in a bathtub tends to drown silently because water splashing into its face causes it to hold its breath involuntarily, preventing it from crying out for help before death occurs. Ratliffe also faults counsel for not obtaining an expert in child behavior and abilities.

Counsel denied during state habeas proceedings that he limited his investigation in any way because he was court-appointed. He stated that he had no basis for believing that any expert could have established that the child would not have cried out prior to death by drowning or that she could not have turned on the water. Counsel stated that his trial strategy was to persuade the judge that Ratliffe could not have foreseen that the baby could turn on the water without Ratliffe's hearing her and therefore, that Ratliffe's act of placing the baby in the tub was a tragic error in judgment, not an act of negligence. Thus, counsel had no desire to promote doubt about the baby's ability to turn on

---

[10]Ratliffe also cites to Footnote 5 of the respondent's motion to dismiss in state habeas proceedings, which read: "Had the Commonwealth been able to prove conclusively that the baby could not turn on the water, such evidence would have excluded the possibility of a criminally negligent drowning." Petitioner has not demonstrated that any such conclusive evidence existed, however. See Discussion of Claim 2, infra.

Case 7:05-cv-00668-JCT-mfu   Document 15   Filed 09/26/06   Page 8 of 20   Pageid#: 173

water, as this fact was inconsistent with his strategy. The Supreme Court of Virginia found that counsel's stated strategy was reasonable, given the fact that Ratliffe was also charged with felony murder, and dismissed this claim as deficient under both parts of Strickland.

This court must agree that counsel's strategy was reasonable and that counsel did a reasonable investigation to pursue that strategy.. Ratliffe misunderstands that she would have been entirely exculpated by proof that the baby was unlikely to have turned on the water. It was conceivable that the fact finder could conclude from such evidence that someone other than the baby accidently turned on the water or left it running. In such circumstances, Ratliffe could still have been found guilty of felony child neglect, and if the fact finder also believed from the evidence that Ratliffe herself was that "someone,"she could also have been found guilty of felony murder. See Barrett v. Commonwealth, 530 S.E.2d 437, 440 (Va. App. 2000). Thus, counsel's stated strategy of avoiding evidence about the baby's unlikely ability to turn on the water was reasonable, and the additional investigation Ratliffe advocates on this topic was inconsistent with that strategy. Indeed, the trial judge acquitted Ratliffe of felony murder, based on his finding that the evidence supported only the inference that the baby had turned on the water and proximately caused her own death. (T. Tr. 224). Moreover, Ratliffe also fails to allege facts indicating specific, conclusive evidence or expert testimony that counsel could have found to show that her child could not have turned on the water or that the child would have drowned silently.[11] As Ratliffe fails to demonstrate either

---

[11]Ratliffe submitted to the state habeas court the prosecutor's notes concerning comments that the emergency room doctor made, to the effect that a ten-month-old child would not likely have the "dexterity to get both faucets." (Pet. Resp. to M. Dism. St. Hab., Ex. 5b). She also refers to notes regarding comments from Rick Moore about the manner of death being "undeterminit [sic]," that "some main event that participated [sic] baby's not." (Id., Ex. 4c). This evidence is not conclusive as applied to Ratliffe's case, as these individuals had no knowledge of the unusual faucets on Riddick's hot tub or the baby's ability at nine months of age to crawl and pull up. Ratliffe also failed to present the specific testimony these individuals would have given at trial on these topics.

Ratliffe offered a printout from a website maintained by the Consumer Product Safety Commission ("CPSC"), indicating, "Child drowning is a silent death." (Id., Ex. 14). This phrase clearly refered to submersion incidents involving children who fall into swimming pools or ponds that are already full of water. Moreover, the CPSC information made generalizations about the percentage of cases in which a drowning baby did not first cry out. It was not conclusive evidence that all babies drown silently. Ratliffe alleges that she provided counsel with similar evidence about babies drowning in bathtubs, but does not demonstrate that this information was any more conclusive

deficient representation or resulting prejudice related to counsel's investigation,[12] the court cannot find that the state courts' disposition of this claim was an unreasonable application of federal law, pursuant to § 2254(d). The court will grant the motion to dismiss as to Claim 2a, 2b, 2c, and 2e.

In Claim 2d, Ratliffe argues that counsel failed to interview the Commonwealth's witnesses as preparation for more effective cross-examination and rebuttal evidence. In the federal petition, Ratliffe lists the witnesses and what additional testimony counsel should have elicited. Respondent argues that this claim is barred under the doctrine of procedural default, because Ratliffe did not raise this same ground for relief in her state petition. Upon review of the record, the court must agree.[13] If Ratliffe now brought this claim before the state courts, they would find it barred under Virginia

---

about all such drownings than the CPSC document provided.

[12]Ratliffe's claim that counsel deliberately failed to investigate viable defense information because he was not well paid as a court-appointed attorney is further contradicted by her in-court statements that she was completely satisfied with her attorney performance before the trial. (T. Tr. 9-11). See United States v. LeMaster, 403 F.3d 216, 221-222 (4th Cir. 2005) (finding that absent extraordinary circumstances, the truth of sworn statements to the court is conclusively established and habeas claims necessarily reliant on allegations contradicting prior sworn statements should be dismissed without an evidentiary hearing) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977) (finding that because"[s]olemn declarations in open court carry a strong presumption of verity"). Ratliffe offers no valid reason why she should not be bound by her representations to the court.

Ratiffe also presents evidence that the baby's father (Ratliffe's co-defendant), who retained counsel, got his case dismissed, even though he was drunk on the night of the baby's death and Ratliffe had no drugs or alcohol in her system. The fact that Andy was not convicted, however, proves nothing about the quality of representation Ratliffe received from her court-appointed attorney. The two co-defendants participated in the events of the evening in entirely different ways. Moreover, under Strickland, Ratliffe is not entitled to an evidentiary hearing to answer a vague question of what retained counsel might have done differently in her case. Poyner, 964 F.2d at 1422. Rather, she must demonstrate a reasonable likelihood that but for her court-appointed attorney's specific acts or omissions, the outcome would have been different. Strickland, 466 U.S. at 694-95

[13]In Ground III( c)(4) of the state petition, Ratliffe asserted that counsel failed to investigate, introduce, argue, or thoroughly question the witnesses about whether the baby cried without Ratliffe's hearing it, whether petitioner's statements about "messing with the water" meant that the baby turned on the water, whether the baby had gotten wet, whether Ratliffe placed the baby in the tub knowing the water was dripping or running, and whether the infant had turned on the water. The Supreme Court of Virginia found from the record that counsel had thoroughly questioned the witnesses and argued in a manner consistent with his trial strategy. The court also found that in connection to this claim, Ratliffe failed to identify the witnesses counsel should have questioned or to articulate questions he should have asked or the answers he would have received. Finding no demonstration of deficient performance or resulting prejudice, the supreme court denied relief on the claim

10

Code Ann. § 8.01-654(B)(2), since she knew the necessary facts to bring this claim in her earlier state petition. This state procedural statute has been upheld as an independent and adequate state law ground for dismissal of a federal claim. See Pope v. Netherland, 113 F.3d 1364, 1372 (4th Cir. 1997); Gray v. Netherland, 99 F.3d 158, 163 (4th Cir. 1996). As Ratliffe fails to offer cause and prejudice or to demonstrate actual innocence as necessary to circumvent her default, this court is procedurally barred from review of this claim on the merits. Teague, 489 U.S. at 298. The court will grant the motion to dismiss as to Claim 2d.

## Claim 3: Consultation on trial strategy

Ratliffe asserts that counsel promised to argue the facts as she related them to him and to the court: the baby never turned on the water or got wet before Ratliffe went to sleep, her statements about the baby turning on the water were a joke, and the baby did not cry or splash that night before drowning. Ratliffe claims that counsel abandoned this strategy without consulting her. The Supreme Court of Virginia found from the record that counsel met with Ratliffe on several occasions and that he kept her informed as necessary. The state court found no deficient performance or prejudice and dismissed the claim under Strickland.

In Claim 3, Ratliffe faults counsel for not rebutting the prosecution's "lies and twisted imaginations" and for arguing that it was not foreseeable that her baby turned on the water and cried and splashed without Ratliffe's hearing her. She says that if he had informed her of his strategy "change," she would have asked for new counsel.

A criminal defendant has no statutory or constitutional right to meet with or communicate at will with the attorney who represents her,[14] see Morris v. Slappy, 461 U.S. 1, 13-14 (1983), and the attorney has the discretion to make tactical decisions about what evidence and argument to present. See Sexton v. French, 163 F.3d 874, 887 (4th Cir. 1991). To prove a constitutional claim here, under Strickland, Ratliffe must prove that counsel's failure to consult with her caused him to

---

[14]The court may not, however, interfere unreasonably with the attorney/client relationship by prohibiting communication between defendant and counsel. See Geders v. United States, 425 U.S. 80, 88 (1976).

11

perform deficiently and prejudiced her. See Hutchins v. Garrison, 724 F.2d 1425, 1431 (4th Cir. 1983).

Ratliffe fails to carry this burden. The court has already found that counsel's strategy was reasonable in light of the evidence and the charges. Counsel offered Ratliffe's testimony and cross-examined witnesses so as to throw doubt on their memory of events and timing. Yet, the trial judge clearly found credible the testimony of Riddick, Smith, and Wood, and inferred from their statements that Ratliffe knew the baby had previously turned on the water, but left her in the tub anyway and did not hear her cry. The judge did not believe Ratliffe's version of events. The general information with which Ratliffe wanted counsel to "rebut" the prosecution's evidence–about the normal dexterity of babies and the percentage of children who drown silently–does not prove that Ratliffe's conduct on December 8 and 9, 2000, was not criminally negligent. As herein discussed, she offers no additional, admissible evidence that would have disproved the evidence on which the judge relied. Thus, the court finds no reasonable probability that Ratliffe's desired strategy--arguing simply that events occurred as she testified--would have resulted in a different outcome. As the state court's disposition of this claim was not unreasonable under Strickland, the court will grant the motion to dismiss as to Claim 3.

**Claims 4, 7, 8 and 11c: Failure to cross-examine Riddick about events [15]**

In Claim 4, Ratliffe asserts that counsel should have asked Riddick whether Ratliffe was joking when she told Andy that the baby turned on the water. Counsel stated that he had no reason to believe that Riddick knew the comment was a joke, and he thought "gallows humor" about the very situation that later killed the baby might negatively affect sentencing. The Supreme Court of Virginia failed the claim under both parts of Strickland, finding that counsel's stated reasons for not asking this question did not represent deficient performance. Riddick testified on direct that he "didn't really even know whether to believe [Ratliffe] or not" and that he could not characterize the

---

[15]Ratliffe alleges generally in Claim 11c that counsel failed to question Riddick effectively on several topics, including the issues raised in Claims 4, 7, and 8.

12

tone of her voice when she told him and the baby's father that the child had turned on the water. (T. Tr. 61). Ratliffe does not present any evidence indicating that cross-examination of Riddick on this issue would have resulted in additional testimony that she was only joking. Thus, the court finds that the state court's disposition of this claim was not unreasonable under Strickland and will grant the motion to dismiss as to Claim 4.

In Claim 7, Ratliffe argues that counsel should have impeached Riddick's testimony with his prior testimony at the preliminary hearing. At the preliminary hearing, Riddick testified that after checking on the baby the first time, Ratliffe told him and the baby's father that the baby had turned on the water. (Pet. Resp. to M. Dism. St. Hab., Ex. 8 at 20). At trial, he testified that she had told them that "the baby had turned the water on and that the baby was wet and the baby wasn't happy." (T. Tr. 61). Counsel stated that he did not press Riddick on this question because he felt the discrepancies were minor and because Riddick was an unwilling witness for the government, whom he did not wish to cross-examine in an aggressive way. The Supreme Court of Virginia relied on counsel's affidavit and cited Strickland, 466 U.S. at 689-90, for its conclusion that questioning of witnesses is a category of trial strategy generally left to the discretion of counsel.

This court does not agree that the discrepancy in Riddick's testimony was minor, since he was the only witness whose testimony indicated that the baby "got wet" before Ratliffe went to sleep.[16] Ratliffe does not offer evidence, however, that if counsel had questioned Riddick about the difference in his trial testimony, Riddick would have affirmed his preliminary hearing testimony. Even if he had, the court finds no reasonable probability that the trial judge would have believed the correction over the original trial testimony in light of other evidence. As the state court's disposition

---

[16]No wet diapers or clothing were found in the condo. The only other evidence the prosecution presented to show that the baby got wet was a damp blanket found between the bed and the tub after the drowning. The prosecutor theorized that on the first occasion when Ratliffe went to check on the child, she found the water running and the blanket and the child damp, removed only the blanket, and put the child back to sleep in the tub anyway. (T. Tr. 217). The trial judge found that Ratliffe placed the child back into the hot tub, knowing that "there was water dripping, running. The child had gotten wet, that [Ratliffe] did nothing to take care of the child after the child had gotten wet. . . . and [left the child] in a position of extreme peril." (T. Tr. 221-224).

of this claim was not unreasonable under Strickland, the court will grant the motion to dismiss as to Claim 7, pursuant to § 2254(d).

Ratliffe asserts in Claim 8 that Riddick did not know the hot tub drain mechanism was broken and counsel should have asked him about this fact.[17] Counsel questioned Riddick on cross-examination about the drain, and Riddick testified that he "[v]ery rarely" used the hot tub and that he did not think the drain plug was functional. (T. Tr. 74-75). Based on this exchange, the state habeas court found that counsel's conduct was neither deficient nor prejudicial. No evidence suggested that Ratliffe knew the drain was not functional before putting the child to sleep in the tub, and the trial judge made no such finding in reaching his conclusion that she foresaw the danger the tub presented to the child. Therefore, the court cannot find that counsel's omission here was deficient or prejudicial. The court will grant the motion to dismiss as to Claim 8 and 11c.

### Claims 5 and 6: No argument that baby never turned on the water

Ratliffe alleges the following facts in support of Claim 5a and 11d. On the night of the baby's death, Ms. Cundiff, an investigating officer, asked Ratliffe directly if her baby had ever turned the water on before, and Ratliffe answered, "No." Ratliffe also asserts that at the hospital that night, she told a nurse, Ms. Wood, that "I should have known better " because the baby had "messed with" the water before. Ms. Wood then asked Ratliffe if the baby had ever turned the water on before, and Ratliffe told her, "No." Ratliffe also told these women that after she went to sleep, the baby never cried that night. Ratliffe does not recall telling counsel about the conversation with Wood, but claims she had told him about the conversation with Cundiff. Five minutes before trial, counsel showed Ratliffe a facsimile that he had received from the prosecutor's office two days before trial. The facsimile included a note regarding Ratliffe's statement to Wood that the baby had "messed with" the water before. Counsel asked Ratliffe if she remembered this conversation, and she said

---

[17]At the preliminary hearing, Riddick testified, "I know now, I didn't know at the time, but the plug sticks down, you can't just raise it up with the (inaudible). You have to have like a screwdriver to raise the plug up." (Pet. Resp. to M. Dism. St. Hab., Ex. 8 at 25).

no. At trial, Ratliffe testified that she did not remember her conversation with Wood, except that she might have said that she should have known better. (T. Tr. 189). In her habeas claim, she asserts that if counsel had showed her the facsimile earlier, before she was under the stress of the trial, she would have remembered telling Wood that the baby never turned on the water. She believes that if counsel had questioned Cundiff and Wood about all the statements they heard her make, the judge would not have understood the term "messed with" as meaning "turned on the water."

The state habeas court found this claim without merit under both parts of Strickland, and this court does not find the disposition to be unreasonable. Counsel could not ask questions at trial about a conversation that Ratliffe had not described to him. Moreover, even now, she does not offer evidence that Wood and Cundiff remember Ratliffe's telling them that the baby never turned on the water. In any event, Ratliffe's prior out-of-court statements to these women were hearsay, as they were not against her interest, and would not likely have been admissible. See Proctor v. Commonwealth, 578 S.E.2d 822, 826 (Va. App. 2003) ("The Supreme Court of Virginia has stated: "As a general rule, a prior consistent statement of a witness is inadmissible hearsay."). But see Graham v. Denko, 129 S.E.2d 825, 827 (Va. 1963) (finding that prior consistent statements of a witness may fall within exception to hearsay rule "where the credibility of the witness has been assailed on the ground that his story is a recent fabrication or that he has some motive for testifying falsely"). At the time she made these prior statements, Ratliffe had to know that she would be investigated for possible criminal involvement in the baby's death; therefore, the trial judge would likely have found these prior statements to Wood or Cundiff just as incredible as he found her trial testimony on this issue. As this court finds no reasonable probability that additional questions to Wood and Cundiff would have resulted in a different outcome, the court cannot find that the state court's disposition of these claims was unreasonable under Strickland. The court will grant the motion to dismiss as to Claims 5a and 11d.

Ratliffe argues in Claim 5c that counsel should have showed her the facsimile about Wood's

15

testimony earlier so she would have had time to remember her full conversation with Wood. The state habeas court dismissed the claim, relying on counsel's affidavit that the facsimile did not contain any new information about which he needed to consult with Ratliffe. This court has already found no reasonable probability that the desired, additional testimony from Wood would have resulted in a different outcome. This claim thus fails under Strickland, the state court's disposition was not unreasonable, and the court will grant the motion to dismiss as to Claim 5c.

In Claim 5b and 6, Ratliffe faults counsel for failing to object to statements by the prosecutors during argument that misled the judge into believing that "messing with the water" meant turning on the water.[18] She asserts that counsel should have argued the absence of evidence that the baby turned on the water. Counsel states that he thought the prosecutors' statements described reasonable inferences one could draw from the evidence. Although counsel did not agree with the prosecution's inferences, he chose to argue that even if Ratliffe should have foreseen the baby's turning on the water, she could not have foreseen that from the bed three feet away, she would not hear and be awakened by the noise of the water or the baby's cries. The fact that this argument was not successful in averting Ratliffe's conviction for child neglect does not render it an unreasonable trial strategy. Arguing that there was no proof the baby turned on the water (or that the baby cried) was inconsistent with counsel's reasonable strategy and the evidence. The state habeas court found no deficient performance or prejudice, and this court cannot find the disposition to be unreasonable under Strickland. The court will grant the motion to dismiss as to Claim 5b.

## Claim 9: Character evidence

Counsel asked Ratliffe before trial to gather affidavits and declarations from friends and relatives, proving her good character--that she was honest and a good mother. (Pet. Resp. to M. Dism. St. Hab., Exhibits 17-21). A Mr. Ellison traveled from West Virginia to be present at

---

[18]During cross-examination, a prosecutor asked Ratliffe if she had told Ms. Wood that she "should have known it because the baby turned, excuse me, not turned, but the baby had messed with the water." (T. Tr. 188-89). In closings, a prosecutor argued that two Commonwealth witnesses had testified that Ratliffe told them that the baby had turned the water on [Riddick] or that the baby had "messed with the water [Wood]." (T. Tr. 202).

16

Ratliffe's trial to testify about her good character. Counsel did call Cynthia Garrett to testify as to Ratliffe's reputation for truth and veracity, but did not ask her about the defendant's character or habits. Ratliffe asserts that counsel erred in failing to move for admission of the affidavits during trial and for not putting on character evidence after he asked her to gather it. Counsel said during state habeas proceedings that he had no desire to put Ratliffe's character at issue, since the Commonwealth had not attacked her character generally during trial. He also noted that the affidavits were hearsay and would have been inadmissible. The state habeas court dismissed this claim under both prongs of <u>Strickland</u>.

The Commonwealth did not present evidence or argument that Ratliffe was of bad character or that she was generally a bad mother. The trial court expressly found that her fitness as a mother was not at issue.[19] While Ratliffe no doubt felt like her character was under attack when the prosecution argued that she had put her baby to bed in wet clothes in a hot tub when she knew the baby could turn on the water. These facts, however, were related directly to the negligent act of which she was convicted and could not have been disproven through testimony about her general character and habits as a mother. Thus, counsel's decision not to put on general character evidence was not an unreasonable strategy and did not prejudice her. As the state court's disposition of these claims was not an unreasonable application of <u>Strickland</u>, the court will grant the motion to dismiss as to Claims 9a, 9b, 11g, and 11h, pursuant to § 2254(d).

**Claim 10: Failure to prove no unreasonable act**

In this claim, Ratliffe complains that counsel did not argue or present additional testimony to demonstrate that her act of putting the baby to sleep in the bathtub was an unreasonable act. Ratliffe's father had testified that Ratliffe herself had slept in the bathtub as a child, and counsel told her that he himself had considered placing his child in the bathtub to sleep. Ratliffe also asserts in

---

[19]During direct, counsel attempted to introduce the child's medical records as evidence that Ratliffe was a good mother who took her child regularly to the doctor for check-ups and other minor matters. The court questioned the relevance of that information, stating, "Nobody has said anything about being a bad mother. The question is what happened that night. (T. Tr. 171).

17

a related ground, Claim 11f, that counsel should have presented testimony from Social Worker Marcia Simmons, who would have testified that a mother's placing a child to sleep in a bathtub, whether or not the child was able to turn on the water, would not meet the criteria for Social Services to conduct an investigation for parental neglect. In dismissing Claims 10 and 11f, the Supreme Court of Virginia found neither deficient performance nor prejudice, noting that Ratliffe was convicted not merely because she put her baby to bed in the bathtub, but because she did so knowing that the baby could turn on the water. The circumstances specific to Ratliffe's case would not have been refuted by the Social Services' general criteria for investigating negligence.

Once again, counsel's strategy was to argue that the accident occurred because of unforeseeable factors, such as the broken drain, the unusual ease with which the faucets turned, and the fact that Ratliffe was not awakened by the sound of the running water or the baby's cries, in addition to the unlikelihood that a child of the victim's age could turn on the water. Counsel stated his belief that the judge found foreseeability to be established by Ratliffe's own "unfortunate statement" that the child had turned on the water faucet. Finding no reasonable likelihood that Ms. Simmons' testimony would have resulted in a different outcome,[20] the court concludes that the state court's disposition of these claims was not an unreasonable application of Strickland and will grant the motion to dismiss as to Claims 10 and 11f accordingly.

**Claim 11: Witness questioning**

In her two remaining grounds, Claims 11a and 11b, Ratliffe contends that counsel was ineffective in failing to question Dr. Galvin (the victim's treating physician) and Dr. Venuti (the medical examiner) about the dexterity of children of the victim's age, in failing to ask Dr. Venuti if she agreed with Rick Moore's out-of-court statements about the unlikelihood that the baby turned

---

[20]Ratliffe also argued in Claim 11f that since Ms. Simmons had investigated the defendant in conjunction with a custody proceeding involving her other two children, the social worker could have testified about Ratliffe's fitness as a mother. As already discussed, counsel reasonably did not put on evidence about Ratliffe's mothering skills because the Commonwealth did not attack her general character. Thus, the court finds no ground for relief under § 2254(d) as to Claim 11f.

18

on the water and that the victim was a healthy, normally developed, and well-tended child. (Pet. Resp. to M. Dism. St. Hab., Ex. 4c).

Ratliffe did not argue in state court that counsel should have asked Dr. Venuti about whether the child appeared well-cared for or demonstrate why she did not do so. Therefore, this claim is procedurally defaulted under Virginia Code § 8.01-654(2)(B), and this court cannot address it on the merits.[21] Teague, 489 U.S. at 298.

The other aspects of Claims 11a and 11b were raised in the state petition, and the Supreme Court of Virginia found no deficient performance or prejudice. Asking these witnesses about the child's ability to turn on the water would have been inconsistent with counsel's chosen trial strategy, as already discussed. The state court found "speculative" Ratliffe's claim about Rick Moore's notes providing important evidence and accordingly, found no showing of deficient performance or prejudice stemming from counsel's failure to question Dr. Venuti about the notes. This court finds the state court's disposition of these claims to be a reasonable application of Strickland, and will grant the motion to dismiss as to Claims 11a and 11b.

### III. Conclusion

The Supreme Court of Virginia adjudicated the majority of Ratliffe's habeas claims on the merits and issued a carefully reasoned opinion finding no ground on which she was denied the effective assistance of counsel. The claims that she brings for the first time in this court are barred from federal habeas review under the doctrine of procedural default. Applying the required deference under § 2254(d) to the state court's disposition of her claims, this court finds no ground upon which Ratliffe is entitled to federal habeas relief.

The petitioner is advised that she may appeal this decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a circuit court of appeals justice or this court issues a certificate of appealability, pursuant to 28 U.S.C. § 2253( c). A certificate of appealability may

---

[21]In any event, the claim fails under Strickland.

19

issue only if the applicant has made a substantial showing of the denial of a constitutional right. § 2253(c)(1). Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." Therefore, the Court declines to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003); Slack v. McDaniel, 529 U.S. 473 (2000). If petitioner intends to appeal, petitioner must file a notice of appeal with this court within 30 days of the date of entry of this judgment, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

ENTER: This 26ᵗʰ day of September, 2006.

Senior United States District Judge

Case 7:05-cv-00668-JCT-mfu   Document 15   Filed 09/26/06   Page 20 of 20   Pageid#: 185